```
UNITED STATES DISTRICT COURT
 MIDDLE DISTRICT OF FLORIDA
      FORT MYERS DIVISION
```

JOEL PEREZ-AGUILAR,

          Petitioner,

v.                            Case No. 2:26-cv-463-JES-DNF

KRISTI NOEM, et al.,

          Respondents.

_____

## **OPINION AND ORDER**

Before the Court are Petitioner Joel Perez-Aguilar's petition for writ of habeas corpus (Doc. 1), the government's response. (Doc. 10), Perez Aguilar's reply (Doc. 11). For the reasons below, the Court grants the petition to the extent set forth in this Order.

### I. Background

Perez Aguilar is a native and citizen of Cuba who entered the United States without inspection on May 9, 2019. (Doc. 1 at 6). Shortly thereafter, he was detained by Immigration and Customs Enforcement (ICE) officers. (Id.). During his detention, ICE officers conducted a credible fear interview and determined that Perez Aguilar's fear was credible. (Doc. 1 at 7). On July 25, 2019, Perez Aguilar appeared at his initial hearing, and on July 30, 2019, he was released on bond. (Doc. 1-2 at 2). Perez Aguilar received work authorization based on his pending application for

asylum, withholding of removal and protection under the Convention Against Torture. (Doc. 1 at 7). Perez Aguilar is scheduled for a June 6, 2028 merits hearing on his asylum application. (Id.).

Perez Aguilar was arrested by ICE officers at his assigned work site on February 6, 2026. (Doc. 1 at 7). He is currently detained at the Florida Soft Side South Detention Facility (Alligator Alcatraz) under the mandatory provisions of 8 U.S.C. § 1225(b)(2). (Doc. 10 at 2). Perez Aguilar now argues, among other things, that he is entitled to a bond hearing under 8 U.S.C. § 1226(a). (Doc. 1 at 26-27).

## II. Discussion

The core dispute before this Court is whether 8 U.S.C. § 1225(b)(2) or § 1226(a) of the Immigration and Nationality Act ("INA") applies to Perez Aguilar. The distinction matters because § 1225(b)(2) mandates detention throughout removal proceedings, whereas noncitizens detained under § 1226(a) have the right to a bond hearing before an immigration judge.

Section 1225(b)(1) establishes the procedures for expedited removal. It allows immigration officers to remove noncitizens "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). As expedited removal affords substantially fewer protections to the noncitizen's rights, the INA limits its applicability in two ways. First, noncitizens may be eligible for expedited removal

"only if they are inadmissible on the basis that they either lack proper entry documents or falsified or misrepresented their application for admission." Coalition for Humane Immigrant Rights v. Noem, 805 F. Supp. 3d 48, 61 (D.D.C. 2025) (citing 8 U.S.C. §§ 1225(b)(1)(A)(i) and 1182(a)(6)(C), (a)(7)). And "[a]mong that set, only two categories of noncitizens are eligible for expedited removal: (1) noncitizens 'arriving in the United States,' and (2) noncitizens who 'ha[ve] not been admitted or paroled into the United States' and cannot affirmatively show that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility.'" Id. (quoting 8 U.S.C. § 1225(b)(1)(A)(i)-(iii)).

Section 1226 of the INA also "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" Jennings v. Rodriguez, 583 U.S. 281, 289 (2018). But § 1226 provides additional safeguards, including the right to an individualized bond hearing. Id. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.")(citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Noncitizens already in the country are treated differently than those seeking entry. As the Supreme Court observed, "our immigration laws have long made a distinction

3

between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.  In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" Leng May Ma v. Barber, 357 U.S. 185, 187 (1958) (quoting Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206 (1953)); see also Zadvydas v. Davis, 533 U.S. 678, 693 (2001)("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").  And until recently, DHS has treated aliens—such as Perez Aguilar—already present in the country as detained under § 1226 and entitled to bond hearings.[1]

Respondents argue that Perez Aguilar is properly detained under section 1225(b).[2]  Indeed, the Court recognizes that in

---

[1] The Government's recent about-face toward mass mandatory detention under § 1225 was blessed by the Board of Immigration Appeals ("BIA") in In re Yajure Hurtado, 29 I.& N. Dec. 216, 229 (B.I.A. 2025).  But the Court owes no deference to the BIA's statutory interpretations.  In 2024, the Supreme Court concluded that "agencies have no special competence in resolving statutory ambiguities. Courts do." Loper Bright Enters. v. Raimondo, 603 U.S. 369, 400–01 (2024).  And "[c]ourts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences." Id. at 403.

[2] In Patel v. Hardin, No. 2:25-cv-870-JES-NPM (M.D. Fla. Dec. 1, 2025), Respondents argued that the Court lacks jurisdiction to consider this petition and that the petitioner has not properly

4

Buenrostro-Mendez v. Bondi, et al., No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6. 2026), the Fifth Circuit Court of Appeals—the only circuit court to have ruled on the issue thus far—recently concluded that most noncitizens apprehended anywhere in the United States are never eligible for release on bond, no matter how long they have resided inside the United States. This is contrary to the overwhelming majority of district court judges to have considered the issue. See also Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir 2005) (concluding that the government was unlikely to prevail on the merits that petitioner was subject to mandatory detention under § 1225(b)(2)(A)). This Court respectfully disagrees with the Fifth Circuit's analysis and finds the analysis in Castanon-Nava and the dissent in Buenrostro-Mendez to be more persuasive on the statutory interpretation issue. In any event, Buenrostro-Mendez is not binding precedent in this Court.

The government could have detained Perez Aguilar without a bond hearing and earmarked him for expedited removal when he

---

exhausted his administrative remedies. The Court rejected those arguments in Patel and in scores of other recent cases presenting the same issues. See, e.g., Cetino v. Hardin, No. 2:25-cv-1037-JES-DNF (M.D. Fla. December 12, 2025); Reyes Rodriguez v. Florida Southside Facility, No. 2:25-cv-1012-JES-DNF (M.D. Fla. December 15, 2025). In those cases, the Court was satisfied of its jurisdiction and determined that exhaustion was excused because it would be futile. The Court's reasoning on these issues also applies here.

5

entered the country in 2019. Instead, they granted him bond and allowed him to stay for more than seven years before rearresting him—even though he complied with all terms of his original bond. Thus, the Court rejects the government's argument that Perez Aguilar is subject to expedited removal and concludes that Respondents' authority to detain him stems from section 1226(a). As a noncitizen detained under section 1226(a), Perez Aguilar has a right to (and was granted) a bond hearing.

If he had not already been granted bond, the Court would order Respondents to either bring Perez Aguilar before an immigration judge for a merit-based § 1226 bond hearing within ten days or release hm from custody. However, the delay is unnecessary here. DHS has already granted Perez Aguilar bond, and Respondents offer no justification for revoking that bond or authority to collect a second bond. Thus, Perez Aguilar is entitled to immediate release under the conditions of his original bond.

Accordingly, it is **ORDERED**:

1. Joel Perez Aguilar's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

2. Respondents shall release Perez Aguilar within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he may be collected.

4. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 12, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE